UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEWEL SYSTEMS, INC., | Civil No. 14-cv-00746-L(JLB) |
| Plaintiff, | **ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS** [doc. #30] |
| v. | |
| CENTINEL GROUP, INC., et al., | |
| Defendants. | |

On April 1, 2014, Plaintiff Jewel Systems, Inc. commenced this action against Defendants Centinel Group Inc.; Richard Rutledge; Nicholas Condos; Arthur Javier; Thomas Coffman; Denis Morgan; Silvergate Investments, Inc. Retirement Trust; and Silvergate Retirements, Inc. Pension Plan. Plaintiff alleges violations of the Computer Fraud and Abuse Act, the Stored Communications Act, and other related state law claims based on Defendants' alleged misappropriation of Plaintiff's intellectual property and confidential business information which was used to start a competing business.

On May 28, 2014, Defendants Thomas Coffman and Silvergate Investments Inc. Retirement Trust (collectively, "Counterclaimants"), filed counterclaims against Plaintiff and non-parties Michael Fongemie and Three Jewels, L.P. (collectively, "Counterdefendants"), alleging breach of multiple contracts for monies loaned to Counterdefendants.

Counterdefendants now move to dismiss the counterclaims. The motion has been fully briefed and is considered on the papers submitted without oral argument in accordance with Civil Local Rule 7.1(d.1). For the following reasons, the Court **GRANTS** Counterdefendants' motion to dismiss Counterclaimants' counterclaims.

## I.      BACKGROUND

Plaintiff Jewel Systems, Inc. ("JSI") is a California corporation. (Compl. ¶ 8.) Defendant Centinel Group, Inc. ("CGI") is a California corporation. (*Id*. ¶ 9.) Defendants, Thomas Coffman ("Coffman"), Richard Rutledge, ("Rutledge"), Arthur Javier ("Javier"), Nicholas Condos ("Condos"), and Denis Morgan ("Morgan"), are all individuals and residents of San Diego County, California. (*Id.* ¶¶ 10-14). Defendant Silvergate Investments, Inc. Retirement Trust ("SIIRT") is a trust; Defendant Coffman is the trustee. (*Id.* ¶ 15.) Defendant Silvergate Investments, Inc. Pension Plan ("SIIPP") is a pension plan; Defendant Coffman is the administrator, trustee, and/or owner.  (*Id.* ¶ 16.)

Plaintiff JSI, formed in 2003, is an Internet-based shipping, insurance, and risk management company, specializing in valuables such as jewelry and watches. (*Id.* ¶¶ 2, 8.) The Defendant individuals, except Morgan, are former JSI employees or contractors.  (*Id.* ¶¶ 10-13.) Defendant CGI, formed in 2013, is a competing company whose website is similar or identical to JSI's website. (*Id.* ¶¶ 7, 32-37.) All of the individual defendants are currently employed by or affiliated with defendant CGI. (*Id.* ¶¶ 10-14.)

For its services, JSI interacts with many carriers such as UPS, DHL, and the United States Parcel Service. (*Id.* ¶ 2.) "Each of these shippers has numerous and highly-specific requirements for the processing, insuring, and shipping of valuables." (*Id.*) The shippers provide their requirements to JSI and other couriers by an "API" ("application program interface"), "a set of routines, protocols and tools for building software code necessary to interface with the shippers' computer systems." (*Id.*) Beginning in 2003, JSI spent "eight years and over $1 million to write and build its code and database, which JSI continues to refine to this day." (*Id.* ¶ 3.) JSI's source code, which "powers JSI's website and business," is "a custom-built code that must necessarily be developed and written from scratch and cannot be based on open source code." (*Id.* ¶ 2.)

"JSI's database is separate from its source code," consisting of: "custom-built risk-management solutions, an anti-fraud management platform, a payments platform, a courier and post office platform, and "extensive customer information acquired and maintained over the years." (*Id.* ¶ 3.)

Defendants Coffman, Rutledge, Javier, and Condos "worked for years in various capacities for JSI since as far back as 2003-2004." (*Id.* ¶ 4.) In February 2013, Coffman resigned from JSI and, "within weeks after Coffman's departure, the remaining defendants one-by-one left JSI and went to work for CGI." (*Id.* ¶ 6.) In March 2013, Defendant CGI was formed. (*Id.* ¶ 6.)

In May 2013, JSI discovered CGI's existence and "immediately began investigating CGI," by hiring a computer forensics expert "to analyze CGI's website and provide a professional opinion as to . . . whether CGI copied JSI's database." (*Id.* ¶ 32.) The expert "confirmed that the code being used by CGI is substantially if not wholly identical to JSI's code." (*Id.* ¶ 32.) JSI also had a third party computer programmer and consultant "analyze and compare the shipcgi.com and jwls.com websites in depth at code level." (*Id.* ¶ 35.) The programmer confirmed "the structure of [the] shipcgi.com website is 100% identical to jwls.com with the exception of content and confirmed that CGI's html, CSS and Java Script code is all the same as JSI's." (*Id.*)

JSI alleges the Defendants conspired with each other "to steal JSI's source code, database, and other confidential information to start a competing company (CGI)." (*Id.* ¶ 7.) Additionally, Defendants "impermissibly and fraudulently used JSI's claim history and other confidential business information to seek and obtain cargo and shipping insurance through CGI's insurance broker." (*Id.*) JSI also alleges defendants Coffman, Rutledge, Javier, and Condos signed non-disclosure agreements ("NDAs") with JSI, "acknowledging that information acquired or developed during their tenure at JSI was confidential and proprietary to JSI and that such information belonged exclusively to JSI." (*Id.* ¶ 22.) JSI concedes it does not have copies of the NDAs, and further alleges one or more of the defendants destroyed or stole the NDAs as "part of their conspiracy to steal JSI's source code and database to start a competing company."

(*Id.* ¶¶ 4, 22.)

On April 1, 2014, JSI filed a complaint in this Court asserting twelve causes of action: (1) violation of the Federal Fraud and Abuse Act; (2) violation of the Federal Stored Communications Act; (3) violation of the California Computer Data Access and Fraud Act; (4) intentional interference with prospective economic advantage; (5) negligent interference with economic advantage; (6) unfair competition; (7) conversion; (8) trespass to chattels; (9) unjust enrichment/restitution; (10) civil conspiracy; (11) breach of contract; and (12) breach of fiduciary duty. (*See id.* ¶¶ 55-132.)

On May 28, 2014, Defendants Thomas Coffman and Silvergate Investments, Inc. Retirement Trust (collectively, "Counterclaimants"), filed their answer and counterclaims in this Court against Plaintiff, and non-parties, Michael Fongemie ("Fongemie") and Three Jewels, L.P. (collectively, "Counterdefendants"), asserting six claims for relief: (1) damages for breach of the First Amended Security Agreement ("FASA"); (2) declaratory relief for breach of the FASA; (3) damages for breach of the $150,000 Loan Agreement; (4) declaratory relief for breach of the $150,000 Loan Agreement; (5) damages for breach of the Promissory Note; and (6) declaratory relief for breach of the Promissory Note. Counterclaimants allege that Counterdefendants owe them for monies loaned in excess of U.S. $320,000, plus interest and costs.

Currently pending is Counterdefendants' motion to dismiss all of the counterclaims.

## II. DISCUSSION

Counterdefendants argue that this Court does not have original or supplemental jurisdiction over Counterclaimants' counterclaims. While Counterclaimants do not contend their counterclaims arise under federal law, they assert the Court must exercise supplemental jurisdiction over one of the counterclaims and should exercise supplemental jurisdiction over the remaining counterclaims.

The Court has original jurisdiction over JSI's initial complaint alleging federal law claims and supplemental jurisdiction over its related state law claims. 28 U.S.C. §§ 1331, 1367. However, the Court does not have original jurisdiction over Counterclaimants' six counterclaims because they all arise under California state law and the counterclaim parties are not diverse. 28

U.S.C. §§ 1331, 1332(a). Thus, the Court must determine whether it has supplemental jurisdiction over the counterclaims. 28 U.S.C. § 1367; FED. R. CIV. P. 13.

The Federal Rules of Civil Procedure provide for two types of counterclaims: compulsory and permissive. *See* FED. R. CIV. P. 13. Additionally, Congress authorized courts to extend supplemental jurisdiction to permissive counterclaims which are "so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Here, the Parties dispute whether the counterclaims are compulsory or permissive.

### A.    Counterclaimants' fifth claim for relief is not compulsory.

Counterclaimants assert their fifth claim for relief for damages for breach of written promissory note is compulsory.

A "compulsory counterclaim" is any claim "the pleader has against any opposing party [at the time the pleading is served] if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." FED. R. CIV. P. 13(a). In general, supplemental jurisdiction automatically extends to compulsory counterclaims, because "[r]efusal to entertain a compulsory counterclaim might lead to its forfeiture." *Mostin v. GL Recovery*, No. 09–0650 AG, 2010 WL 668808, at *2 (C.D. Cal. Feb. 19, 2010) (citing *Baker v. Gold Seal Liquors*, 417 U.S. 467, 468 n. 1 (1974)).

The Ninth Circuit applies "the logical relationship test for compulsory counterclaims." *Mattel, Inc. V. MGA Entertainment, Inc.*, 705 F.3d 1108, 1110 (9th Cir. 2013) (citing *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1195-96 (9th Cir. 2005) (internal quotation marks omitted)). The logical relationship test requires courts to "analyze whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Martin v. Law Offices of John F. Edwards*, 262 F.R.D. 534, 536 (S.D. Cal. 2009) (citing *Pochiro v. Prudential Ins. Co. of Amer.*, 827 F.2d 1246, 1249 (9th Cir. 1987)).

In the original action, Plaintiff JSI alleged violations of federal law and related state law

claims against Defendants, including misappropriation of JSI's intellectual property and confidential business information to start a competing business. In contrast, Counterclaimants assert state law claims for breach of contract for money loaned against JSI and the other Counterdefendants.

On its face, the complaint and all the counterclaims appear to be unrelated actions with some overlapping parties. However, Counterclaimants argue their fifth claim for relief is a compulsory counterclaim. (*See* Ps & As Opp'n. at 1:8-10.) The fifth claim for relief alleges breach of contract for a loan between Counterclaimant Coffman and the Counterdefendants while Coffman was still employed by Counterdefendant JSI. *See id.* at 7. Counterclaimants cite to the facts and allegations in Plaintiff/Counterdefendant JSI's complaint to show why the fifth counterclaim is compulsory. *See id.* at 4. Counterclaimants point to the Complaint's: (1) references to the loans Counterclaimants now seek relief for; (2) naming of Counterclaimant SIIRT as a defendant; (3) allegations that Counterclaimant Coffman "mismanaged JSI," and was, with the other Defendants, "responsible for JSI's devastating financial problems" as part of the conspiracy to "take over JSI"; (4) allegations that the Defendants harmed JSI's business; (5) allegations of reasons for the Defendants' resignations from JSI; (6) allegations of breach of employment contracts; and (7) similarity to the Complaint in that both the Complaint and Counterclaim allege the existence of alter egos, as facts that show the "Complaint and Counterclaim are part of the same 'case or controversy.'" (*Id.* at 5).

Despite Counterclaimants' efforts to demonstrate otherwise, the Court agrees with Counterdefendants that "there is no 'logical relationship' between [the fifth claim for relief] for unpaid debt[] and JSI's allegations that Defendants stole JSI's confidential computer code and are interfering with JSI's prospective economic advantage." (Mot. Ps & As at 5.) The essential facts between the Complaint and the fifth claim for relief are not "logically connected"; the Complaint's essential facts involve misappropriation and interference with economic advantage by the Defendants and the Counterclaim's essential facts concern failure to repay a loan by the Counterdefendants. Additionally, the Court fails to see how two requests by opposing parties to treat businesses as the alter ego of individuals are essential facts to support supplemental

6

14cv746

jurisdiction.

Thus, there is nothing about Counterclaimants' fifth claim for relief that is "so logically connected that considerations of judicial economy and fairness dictate that all the issue be resolved in one lawsuit." *Martin*, 262 F.R.D. at 536 (citing *Pochiro*, 827 F.2d at 1249). Furthermore, adjudication of the pending action would not affect Counterclaimants' right to later seek remedy for the fifth claim for relief in state court because Plaintiff's complaint is separate and distinct from Counterclaimants' breach of contract claim.

For the foregoing reasons, the counterclaims are not compulsory.

### B. The counterclaims are permissive, but the Court must decline exercising jurisdiction because it lacks subject matter jurisdiction.

A "permissive counterclaim" is "any claim that is not compulsory." FED. R. CIV. P. 13(b). Although Counterclaimants asserted that only its fifth claim for relief was compulsory, for the same reasons discussed above, the Court also finds the remaining counterclaims for breach of contract for monies owed by Counterdefendants are not compulsory. Because the counterclaims are not compulsory, they must be permissive. *See* FED. R. CIV. P. 13(b).

Prior to 1990, when Congress enacted 28 U.S.C § 1367, "the rule was clear that federal courts did not have jurisdiction over permissive counterclaims absent an independent basis for federal subject matter jurisdiction." *Sparrow v. Mazda Amer. Credit*, 385 F.Supp. 2d 1063, 1066 (E.D. Cal. 2005); *see also Jones v. Ford Motor Credit Co.,* 358 F.3d 205, 212-23 (2d Cir. 2004); *Channell v. Citicorp Nat. Services, Inc.*, 89 F.3d 379, 384 (7th Cir. 1996)). Since 28 U.S.C. § 1367's enactment, "[w]hen there is no independent basis for jurisdiction over a permissive counterclaim, the court may still exercise supplemental jurisdiction over such claims if they are 'so related to the claims in the action . . . that they form part of the same case or controversy.'" *Martin*, 262 F.R.D. at 536 (citing 28 U.S.C.A. § 1367(a)). "Non-federal [permissive] counterclaims are part of the same 'case' as federal claims when they derive from a common nucleus of operative fact." *Lou v. Ma Labs., Inc.*, No. C 12-05409, 2013 U.S. Dist. LEXIS 109135, at \*9 (N.D. Cal. Aug. 2, 2013) (citing *Pochiro*, 827 F.2d at 1249).

As neither Party suggest that the counterclaims arise under federal law, the Court must

determine whether it may exercise jurisdiction over the counterclaims under 28 U.S.C. § 1367. *See Martin*, 262 F.R.D. at 537 (finding no dispute that the counterclaim lacked an independent basis for subject matter jurisdiction, "the only issue to be decided here is whether this Court should exercise supplemental jurisdiction over the permissive counterclaim."); *see also City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

Counterclaimants argue that this Court should exercise supplemental jurisdiction because: (1) "the evidence to be submitted in support of [the counterclaims] is the same evidence as defendants would use to rebut plaintiff's theories about the motivations and reasons for leaving JSI."; (2) "it will be impossible to settle this case unless the obligations owed by [Counterdefendants] . . . are addressed," and (3) the motion, if granted, would force Counterclaimants to file another proceeding in state court. *(*Opp'n. at 6, 8.)

Counterclaimants' arguments are not persuasive because they fail to show how their claims are part of the "same case and controversy" or derive from a "common nucleus of operative fact." *Martin*, 262 F.R.D. at 536 (citing 28 U.S.C.A. § 1367(a)). The Court agrees with Counterdefendants that the "non-payment of various notes and security agreements plainly do not derive from the operative facts underlying [Plaintiff's] claims for conversion of its database and code, and related claims." (Mot. Ps & As at 5.) Furthermore, despite their assertions to the contrary, Counterclaimants have failed to show even a "loose factual connection" between JSI's allegations of misappropriation and interference with economic advantage and their claims for breaches of contracts for monies owed. *See Lou*, 2013 U.S. Dist. LEXIS 109135, at *9-10 ("The mere fact that the parties were once linked by an employer-employee relationship is insufficient when the claims would stir such different issues and rely on such divergent facts and evidence.").

In light of the foregoing, the Court finds the counterclaims are permissive but not compulsory. Moreover, the Court declines to exercise supplemental jurisdiction over any of the counterclaims because Counterclaimants have failed to show how their counterclaims form part of the same case or controversy as Plaintiff/Counterdefendant JSI's federal or related state law claims.

1  **III.   CONCLUSION & ORDER**

2  For the foregoing reasons, the Court **GRANTS** Counterdefendants' motion to dismiss.

3  **IT IS SO ORDERED.**

4  DATED: September 22, 2014

       _____
       M. James Lorenz
       United States District Court Judge

7  COPY TO:

8  HON. JILL L. BURKHARDT
   UNITED STATES MAGISTRATE JUDGE

10 ALL PARTIES/COUNSEL